May it please the Court. Five years ago, in Perdue v. Kenney A., the Supreme Court of the United States held that a reasonable fee was defined as a fee adequate to attract a capable attorney to undertake a meritorious civil rights case. The approximately $107,000 fee awarded here after eight years of delay for the excellent results achieved in a winning plaintiff's verdict plus two successful appeals and now a third appeal does not meet that definition. In the context of a lawyer with 41 years experience in employment law who has handled over 500, probably close to 1,000, employment cases in the last 41 years. But you don't seem to have an hourly rate, do you? Well, I've been getting, Judge, in the years 2006-2012 between 540 and 620. There's a lot of evidence in the record of that. I don't understand your answer. Well, I don't have hourly. You don't have an hourly rate. Well, I do, but I don't. Well, you do and you don't? Come on. Well, I don't have clients that pay me by the hour whether I win, lose, or draw. You don't have an hourly rate. I don't have that. That's true. But I've been getting between 540 and 620, actually up until 2012. Currently, I'm getting about 655, 665. And that is calculated how? Well, it's based on previous successes I've had. I mean, I've got a pretty good track record in front of that jury. You mean as a measure of the contingency fee arrangement? Is that what you're referring to? No. The contingency fee, I'm talking about the hourly rate that I get. How are you calculating the hourly rate? By what other lawyers generally have charged around the area. No, you just made a representation that this is your rate. This is what you've been getting. Right. Are you talking about as a consequence of contingency fee awards and the 33% award? Fee shifting. No, the contingency fee is separate. My fee agreement, the lodestar I'm talking about, the fee shifting from the defendant is based on hourly rates that other lawyers, in fact, I have three affidavits from attorneys in this case, who attest that they charge about what I do. So it's market rate. Market rate, okay. And the Illinois Supreme Court permits you to recover both on a contingency fee basis, 33% of the judgment, as well as a flat fee plus a statutory award? The Supreme Court of the United States decided that in 1990 in Venegas v. Mitchell. The plaintiff can contract with his or her lawyer to assign. I understand that that's a contract and it's enforceable. Right. But under the ethics code, the Supreme Court of Illinois authorizes this kind of double recovery? The Supreme Court of Illinois is silent on the issue. Okay. All right, but the Supreme Court of the United States has stated. As a matter of contract. I'm not talking about as a matter of contract. I get that. Right. You can get your client to contract away all of this stuff. Right. And that's enforceable. I'm talking about as an ethical matter in terms of what the regulatory authority, meaning the state Supreme Court, considers ethical. It's not unethical. It's not unethical. I've been to the ARDC 50 times on it. That just surprises me. Yeah. It's not unethical. All right. The lawyer can contract. And, in fact, this is a classic example of why I have the type of fee agreement I have. If I were assured that I would be getting reasonable compensation from some of the judges in the district court, I wouldn't have this kind of fee agreement. But the hourly rate is based on the market rate. I had three affidavits. Now, when I was here the last time, about four years ago, on this Title VII retaliation case, which I won with a $50,000 punitive damage award, there was nothing wrong with my affidavits in support of my requested hourly rates between 540 and 620 in the years 2006 to 2012. Judge Pallmeyer did not award the requested rates only because she found the affidavits. The affidavits did not state that those lawyers had added a contingent fee on top of their hourly fee. That finding was vacated by this court. And I cited Venegas v. Mitchell. And the case was remanded to Judge Pallmeyer for the purpose of determining whether she would award. She gave me an arbitrary $400 an hour rate, which she apparently pulled out of thin air, quite frankly. What she did was she took a fee award from this court about 10 or 12 years earlier, and she matched it to the Consumer Price Index, and she said, well, you know, the Consumer Price Index doesn't warrant that rate. But she found my affidavits less persuasive. First she said my affidavits arguably support the requested rates. Then she said that they are less persuasive because the three defense lawyers who do this kind of work did not put in their affidavits that they get a contingent fee on top of the load star or the hourly rate. That was vacated. The case was remanded to Judge Pallmeyer for the purpose of determining whether she would arrive at the same $400 hourly rate without consideration of the contingent fee. Unfortunately, the case never made it back to Judge Pallmeyer. When it was remanded, the court clerk assigned the case to a newly appointed judge, who in turn referred it to a magistrate. That magistrate was retiring, so he sent it back to Judge Lee, who held the case for two years. Judge Lee held an evidentiary hearing in May 2013. He had it under advisement for another year, and then a year later Judge Shaw got the case. So the fourth judge on the case got it. And, you know, by the way, Judge Sykes, you know, I see your concern. This fee is not unreasonable. You know, I'm permitted. You know, I am very, very experienced. And I explain to people they don't have to hire me when they come in. There's over 60,000 lawyers in Cook County. I'm sure they can find a cheaper lawyer. So that fee is the fee agreement I have is precisely for something like this, where I'm getting undercompensated and I'm not getting my rate. So anyway, this court and Judge Pallmeyer found my three affidavits adequate. They did not find them inadequate. On remand, Judge Shaw gets the case, and he undoes what this court and Judge Pallmeyer did, and he re-decides the case on totally different issues or for totally different reasons. First, he said that the affidavits were inadequate because they were at a high level of generality. And the three lawyers did not state that they had records of public discipline, which is a factor one would expect the market to take into account when determining a rate for an attorney. There was no evidence to support this speculation that prior unrelated public discipline for something that happened 18 years ago has any relevancy in this case, in the determination of the fee. This court also, about two months after deciding this case in December 2011, in February 2012, this court decided Johnson v. GDF, which was another case I won and got excellent results in front of a jury with punitive damages. And in that case, the district court's finding was reversed and remanded because the district judge and the magistrate had taken into account my unrelated public discipline. So Judge Shaw and the case he relied on also disregarded an affidavit from Vicki Abramson, which stated that her hourly rate was $5.50. I see I don't have much time left, but I want to direct your attention. Well, you've got the rest. You saved some for rebuttal. I'm going to save some for rebuttal, but if you were looking at what market rates are, I would suggest you look in the supplemental appendix. I have an expert witness's report there, which you can take judicial notice of, in the case that Judge Holderman decided two years ago, three years ago actually, showing that my market rate was commensurate with what this expert witness said. Judge Shaw also denied fees for pursuing fees on the grounds that I had apparently waived them when there's no such waiver. I have a transcript for June 14, or the July 14 of last year, where I expressly told him I wanted to file additional time records. I also stated in a joint initial status report that I was seeking additional fees. This record here is very clear that my rates between $5.40 and $6.20 for the years 2006 through 2012 should have been approved. Thank you. Thank you, Mr. Rossiello. Mr. Weintraub? Your Honors, may it please the Court, Gary Weintraub for the appellee. Your Honor, I also find Mr. Rossiello's fee arrangement ethically troubling. This Court, in the prior opinion, said, and I don't have it in front of me, that Mr. Rossiello may have taken undue advantage of his client. Under those circumstances, I felt, and I still feel, that I had no alternative at the time but to send that decision to the ARDC, which I did, and which, as Mr. Rossiello indicates, resulted in no action. So whether it is, in fact, an ethical violation, I suppose, in the ARDC's view, it is not. Would you put the mic down lower and try to speak into the mic instead of looking off? I should put the whole podium lower. There's a button there. Is that good? No, there's a button to move the podium. Is that better? Much better. Thank you. Now you can move the mic up. Okay. With respect to Judge Posner's question as to whether Mr. Rossiello has a rate, no client pays him the rate that he requested. And, in fact, what I also find to be extremely troubling is that in his various fee petitions to the district court in this case and in other cases, he claims different rates for the same periods of time. In this case, he filed three different renewed fee petitions. In the first fee petition, let me say it this way. For 2006, he first claimed his rate was $565 an hour, docket 112, and this is summarized at page 14 of our brief, Your Honor. In his second fee petition for the same period, he claimed his rate was $592.50. In his third renewed fee petition, he claimed his rate was $540 an hour. For 2007, it went from $585 to $592.50 to $560. For 2008, it was first $605 an hour, then it was $592.50, then it was $620 an hour. For 2009, it was $620, $592.50, then $620. And Mr. Rossiello mentioned the Johnson v. GDF case. In the fee petition he filed there, Magistrate Judge Gilbert similarly noted that he submitted an order purporting to award him $625 an hour for 2007. That would be a fourth rate. $620 for the rest of the time he billed in 2005, 06, and 08, and 10. So it's in that range of $500 to $620. Did you submit any evidence supporting a lower hourly rate or primarily relied on the fluctuation in his rate? No, we submitted evidence. We cited two other cases. We relied on prior awards to him. We submitted CPI data, which both Judge Pallmeyer and Judge Shaw applied to the highest hourly rate that he had been awarded. But not from individual lawyers, no individual lawyers? No, Your Honor. No, Your Honor, we did not. And to be quite honest, Your Honor, when Mr. Rossiello talks about placing undue burden on him in terms of proof, it is practically a lot easier for lawyers to get other lawyers to submit affidavits in support of a rate setting forth what their rates are and how high they are than to get other lawyers to come forward and oppose a particular lawyer's hourly rate. Judge Shaw followed exactly the Seventh Circuit's direction on remand. He redetermined the rate without regard or mention of the contingent fee agreement, which Mr. Rossiello also received. This court directed, Mr. Rossiello requested the first time, complained that he had not had the opportunity to address the CPI or the Laffey Matrix and that this court, or Judge Pallmeyer, applied them sua sponte. This court directed that he be given an opportunity to address those, that the parties be given an opportunity. On remand, as Judge Shaw noted, he abandoned that. In his papers, he didn't say a word about it. Only when we submitted the data did he reply, and then only in a sentence. What is the $400 rate based on? That Judge Pallmeyer determined? Yeah. It's based on all of the factors set forth in her opinion, Your Honor. All the prior awards to him, the Consumer Price Index, applying that to the highest rate he had ever been awarded. I don't have her entire opinion there, but she considered a number of factors. She considered his affidavits. She discounted them. In fact, this court, when it considered the affidavits, said, 664 F. 3rd. 647. The affidavits here do provide some support for a rate in the range requested by Mr. Rossiello, but also provide support for a lower rate. In fact, one of his affidavits, Mr. Schneidig, says that the hourly rate for an attorney with Mr. Rossiello's range of experience was between $450 and $500 an hour, not very far from the range which Judge Pallmeyer originally determined and Judge Shah increased to $425 an hour. Your Honor, one more point. Mr. Rossiello submitted a Rule 28 Supplemental Authority letter last Thursday or Friday. I think I'm permitted to respond in writing, but I want to say one thing about that. He cites the case of ADT Securities versus Lyle Woodridge Fire District. He says, and I quote, Mr. Bruce L. Goldsmith attested that his 2014 hourly billing rate was $620. Well, first of all, Mr. Goldsmith's affidavit in that case was never submitted and is not evidence in this case. But what Mr. Rossiello neglects, more importantly to mention, is that Mr. Goldsmith neither asked nor was awarded by Judge Shader $620 an hour in that case. He actually requested $391.50. What he said in his affidavit, which Mr. Rossiello quotes selectively, my standard billing rate for services of the nature performed in this matter is $620 per hour. In recognition of the generally lower rate structure associated with the practice in suburban Chicago market compared to downtown Chicago rates, our firm often offers a discounted rate to certain clients who are served primarily by attorneys in our suburban Lyle office. My suburban hourly rate is $435. Then he goes on to say in paragraph 10 of his affidavit, our firm also agreed the rate charged would be adjusted by a discount of 10% off the suburban hourly rate. Okay, let me ask you this. Judge Shaw makes reference to this public discipline issue. Yes. Was that argued by you? Was that in the brief? Your Honor, unfortunately the record is full of argument and discussion about Mr. Rossiello's disciplinary status. He was suspended twice during the course of this case, the second time for practicing through another attorney. So he knew that that would then affect the argument as it related to rate? In fact, he filed a motion saying that part of the reason he needed an evidentiary hearing was so that he could speak to his disciplinary status. So yes. No, I just couldn't tell from the opinion. Besides that, I believe that when an attorney files a fee petition, one of the factors is his reputation and that he puts his reputation in issue  I also think that strictly as a matter of economics, his rate and his disciplinary history are germane and I think we only have to ask Jared Fogle about how reputation affects what you're worth in the market. With that, thank you very much, Your Honor. Thank you, Mr. Weintraub. Mr. Rossiello? First of all, Judge Williams, in regard to your question, he filed nothing. His only evidence, and Judge Flom in the decision says, the evidence from defendant was sparse. He also said, Judge Flom, a second place in the decision, that the defendant offered hardly any evidence. His only evidence was to criticize my past fee awards over the last 20 years. He filed no time records, no bills, no receipts, no affidavits from other attorneys. He didn't even file his own affidavit, like Blum v. Stenson said he's supposed to. So he had virtually nothing. I had three affidavits which were accepted. The only reason Judge Pallmeyer discounted my affidavits was that the three attorneys didn't say that they had a contingency fee on top of an hourly rate and this court held, following the Supreme Court, that that was impermissible. Another thing, he says it's hard for him to find lawyers to give affidavits. It's a lot harder for a plaintiff's lawyer. Defense lawyers, lawyers in general, don't want to tell other lawyers what they're billing hourly. It is extremely difficult to get these affidavits. Fortunately, I have a good rapport with most of the defense bar, and I was able to get these three affidavits. So as far as my reputation is concerned, my disciplinary problems actually haven't stopped people from calling me. So totally irrelevant, had nothing whatsoever to do with this case. Something that happened in, I think, 1996, the day I got back from the Supreme Court, arguing the Ellerth case. Thank you. OK. Well, thank you very much, Mr. Ocielo and Mr. Pallmeyer.